HAROLD E. SCOTT, Guardian, Appellant, v. PETER DAGEL et al., Appellees.

**BILLS AND NOTES:** Instruments Negotiable—Indefinite Maturity. A promissory note which is payable ''on settlement of William Dagel estate after date'' is nonnegotiable. (See Book of Anno., Vol. 1, Sec. 9464.)

Headnote 1:   8 C. J. p. 136.

*Appeal from Osceola District Court.*—WILLIAM HUTCHINSON, Judge.

NOVEMBER 24, 1925.

ACTION in equity by the guardian of a person of unsound mind, to set aside the contract and note of his ward on the ground of fraud and the ward's incapacity. From a decree denying relief against a transferee of the note, who claimed to be a holder in due course of a negotiable note, the plaintiff appeals.—*Reversed.*

*W. C. Garderson* and *E. E. Wagner,* for appellant.

*T. E. Diamond* and *B. F. Butler,* for Beth B. Buchanan, appellee.

VERMILION, J.—The appellant's ward, Lucy Anderson, entered into a written contract with Peter Dagel, her brother, for the purchase from him of a farm, and executed and delivered to Dagel her promissory note for $21,000, a portion of the purchase price. To secure the performance of her contract she assigned to Dagel all her interest in the estate of her father, William Dagel, then deceased. Peter Dagel, before maturity, transferred the note by indorsement to the appellee Beth B.

Buchanan, as collateral security for the payment of a pre-existing indebtedness owed by him to Beth B. Buchanan, and also assigned to her all interest in the estate of William Dagel held by him under the assignment from Lucy Anderson. Thereafter, appellant was appointed guardian of the property of Lucy Anderson, as a person of unsound mind, and brought this action in equity against Peter Dagel, Beth B. Buchanan, and others, alleging that his ward was, at the time of the execution by her of the instruments referred to, of unsound mind, and that they were obtained by fraud. Upon the trial in the court below, appellant prevailed, as against Peter Dagel and all other defendants except Beth B. Buchanan; and as against them, the contract, note, and assignment were set aside. The appellee Buchanan was, by the decree, given a lien for the amount she had paid for the notes of Peter Dagel upon the interest of appellant's ward in the estate of William Dagel, but was required to first exhaust her remedy against Peter Dagel under a mortgage held by her, and against all the property of Peter Dagel, including his interest in his father's estate. From the portion of the decree denying him relief against Beth B. Buchanan, the guardian has appealed. The defendants against whom the decree was entered have not appealed.

The only question before us is as to the right of the appellant to secure the relief prayed as against the appellee Buchanan.

I. It is argued on behalf of the appellee that the evidence is insufficient to establish that Lucy Anderson was of unsound mind. A careful reading of the record leaves no doubt whatever in our minds of the correctness of the court's finding in this respect. She is forty-five years of age, has been married many years, and is the mother of nine children; but, as the result of arrested development caused by disease in childhood, has the mentality of a child of six or seven. Although she attended school, she was incapable of studying. She can neither read, write, nor count. She has for many years suffered from obsessive fears. She is incapable of performing any but the simplest household duties, and does not make even the most insignificant purchases for herself or her home. Aside from the

testimony of neighbors and physicians, her own examination as a witness disclosed fully her lack of mentality.

On the death of her father, who was a man of wealth, she inherited an estate at that time supposed to amount to $25,000. The defendant E. M. Taylor, a banker, had, before the father was buried, personally, and through an agent whom he agreed to pay for such services, solicited the heirs to have himself appointed administrator. Within a few weeks after his appointment, Taylor, as the agent of her brother, sold to Lucy Anderson a farm of 120 acres for $33,000. He represented that there was a mortgage of $12,000 on the land, and took her note for $21,000, secured by an assignment of her entire interest in her father's estate, for the balance of the purchase price. There were second and third mortgages on the land, aggregating $8,800. The land itself was misrepresented by the defendant Peter Dagel. Dagel, of course, knew, and Taylor had such opportunity that he must have known, of the mental condition of the woman whom they thus despoiled. It is hardly necessary to add that she was a victim of the grossest fraud, and that the decree in favor of appellee Beth Buchanan cannot be sustained on the theory that the right of appellant to recover against Peter Dagel was not established. Her right must depend on whether she was a holder in due course of a negotiable instrument, and therefore took it free from defenses good as against the payee.

II. It is insisted that the note is not negotiable. It is by its terms due "on settlement of William Dagel estate after date."

The Negotiable Instruments Act requires, as an essential of a negotiable instrument, that it be payable on demand, or at a fixed or determinable future time (Section 3060-a1, Code Supplement of 1913, Section 9461, Code of 1924); and provides that an instrument is payable at a determinable future time where it is expressed to be payable on or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of happening be uncertain. Section 3060-a4, Code Supplement, 1913 (Section 9464, Code of 1924.)

By Section 3394, Code of 1897 (Section 12044, Code of 1924), final settlement of estates is required to be made within

three years, unless otherwise ordered by the court. Does it result from this requirement of the statute that an estate will certainly be settled? It is the certainty, in the natural course of things, of the happening of the event upon the occurrence of which the note becomes due, that is essential to negotiability,—not merely that the law contemplates, or even requires, save, perhaps, in the case of a self-executing statute, that the event shall happen. We have not acquired such a state of perfection in our obedience to statutory law as to permit it to be said that, because the statute requires a thing to be done, it is certain to be done. It is well suggested in argument that an estate may be dissipated by the administrator, and no settlement ever be made. The precise question was before the Supreme Court of Illinois in *Husband v. Epling,* 81 Ill. 172 (25 Am. Rep. 273), where an instrument was payable when a certain estate was "settled up," and the court said:

"Can it be said to have been morally certain, when the instrument was executed, that the estate ever would be settled up? The law requires estates to be settled, and fixes a period within which it shall be done; but it does not, of and by itself, settle them. The presumption is that the law in this regard, as in others, will be obeyed; but this presumption does not amount to absolute certainty. The enforcement of the law depending on human agencies, is liable to be affected or controlled by many circumstances, and instances where it is not only not fully enforced, but is openly violated, are within the experience of all, so that it is impossible to predict with moral certainty that a thing will be done simply because it is the command of the law that it shall be."

We are of the opinion that the note is not negotiable. It follows that the appellee Buchanan could not become a holder in due course, and took the note subject to defenses available to the maker as against the payee.

The appellee claimed to hold the note only as collateral security for the debt of Peter Dagel. If she could not enforce the note against the maker, she could not enforce the assignment of the maker's interest in the estate accompanying it as security. No consideration moved between appellee and the maker, and no

debt of the maker's to the appellee existed that would entitle the latter to the benefit of the security when the note failed.

Because of our conclusion that the note was not negotiable for the reason stated, and that, in any view of the matter, appellee took it subject to defenses available against the payee, it is unnecessary to consider other questions discussed.

The appellant was entitled to the relief prayed as against the appellee Buchanan, and the judgment and decree in her favor are—*Reversed*.

Faville, C. J., and Stevens and De Graff, JJ., concur.