841 P.2d 413

Blaine FOSTER and Votis Foster, husband and wife, Plaintiffs–Appellants,

v.

CITY OF ST. ANTHONY, a municipal corporation, Defendant–Respondent.

Steve ZUNDEL and Judy Zundel, husband and wife; and David Murdoch and Yvonne Murdoch, husband and wife; as representative parties of the property owners of the City of St. Anthony, Plaintiffs–Appellants,

v.

The CITY OF ST. ANTHONY, a municipal corporation, Defendant–Respondent,

v.

The STATE of Idaho, By and Through the DEPARTMENT AND BOARD OF CORRECTIONS, Defendant–Intervenor–Respondent.

Nos. 19675, 19866.

Supreme Court of Idaho, Idaho Falls, September 1992 Term.

Oct. 28, 1992.

Rehearing Denied Dec. 15, 1992.

Daniel L. Hawkley, Boise, for plaintiffs-appellants.

Hoopes & Thomson, Chtd., Rexburg, for defendant-respondent City of St. Anthony. Karen L. Rogers argued.

Larry EchoHawk, Atty. Gen.; and Robert R. Gates and Michael R. Jones, Boise, for defendant-intervenor-respondent State of Idaho. Michael R. Jones argued.

JOHNSON, Justice.

The two cases that are before us in this appeal are primarily zoning cases. We are also required to address questions of municipal law, administrative law, claim preclusion, and the award of attorney fees.

I.

BACKGROUND AND PRIOR PROCEEDINGS

On December 20, 1989, the City of St. Anthony leased an unused hospital owned by the city to the State of Idaho for use as a correctional facility. The city contends

that the mayor and the city council approved a resolution authorizing the lease in a preliminary oral vote on December 12, 1989, and in a final oral vote on December 20, 1989. The mayor signed the resolution on December 22, 1989.

When the city leased the hospital to the state, the property was zoned as a "conditional use district." The city's zoning ordinance listed a hospital as a permitted conditional use. The city took the position that a correctional facility was allowed in a conditional use district without the issuance of a "special use permit."

## THE FOSTER CASE

In the first case that is before us in this appeal, the owners of property across the street from the hospital, Blaine and Votis Foster (Foster), applied for a writ of mandamus requiring the city to put the question of leasing the hospital to a popular vote. Later, by amendment Foster sought declaratory and injunctive relief to prevent the city from allowing the hospital to be used as a correctional facility. Foster asserted that the lease was invalid because: (1) the city did not follow procedural and technical formalities required to approve a resolution, (2) a correctional facility was not allowed in a conditional use district without a special use permit, and (3) the failure of the city to give public notice and conduct public hearings violated Foster's procedural due process rights.

The trial court granted summary judgment (Foster I) permanently enjoining the city from using the hospital as a correctional facility until the city fully complied with the procedural due process requirements set forth in the city's zoning ordinance and in *Cooper v. Board of County Comm'r*, 101 Idaho 407, 614 P.2d 947 (1980).

The state then applied for a special use permit to permit the use of the hospital as a correctional facility. Following public hearings the city approved the permit. Foster requested that the trial court review the administrative proceedings. Following a hearing, the trial court found that the city violated I.C. §§ 67–6535 and 67–6536 by its failure to: (1) keep the required transcribable record of the hearings required under I.C. § 67–6536, (2) have standards and criteria within its zoning ordinances by which to evaluate the merits of issuing a special use permit as required by I.C. § 67–6535, and (3) provide meaningful discussion to support its findings as required by I.C. § 67–6535. The trial court remanded the matter to the city for further proceedings.

Both the city's planning and zoning commission and the city council held public hearings to consider amending the city's comprehensive land use plan and zoning ordinance. The city council approved the amendments, which provided for the creation of "public service districts," and authorized the planning and zoning commission to rezone any area as a public service district that was determined to be of local or state importance.

The state then withdrew its application for a special use permit and applied for a building permit authorizing the repair of the hospital roof. The planning and zoning commission held a hearing and approved the building permit.

The trial court then granted the state's motion to dissolve the injunction, denied relief to Foster on other issues, and denied Foster attorney fees (Foster II). Foster appealed.

## THE ZUNDEL CASE

In the second case that is before us in this appeal, Foster, Steve and Judy Zundel, and David and Yvonne Murdoch (referred to collectively as Zundel), as representative parties of the property owners in the city, brought a class action against the city. By this action Zundel sought: (1) declaratory judgment that the city's amended comprehensive land use plan and zoning ordinance were invalid, and (2) an injunction enjoining the city from permitting any use of property within the city except as permitted before the attempted amendment of the zoning ordinance. Later, Zundel amended the complaint to delete Foster as a party and to eliminate the request for injunctive relief. The amended complaint alleged that the

amended zoning ordinance did not conform to state law.

The trial court allowed the state to intervene as a defendant in the Zundel case. The city moved to dismiss Zundel's claim on the ground it was precluded under the doctrine of res judicata by the final judgment in the Foster case. The state moved to dismiss, asserting that Zundel had failed to exhaust administrative remedies and that the claim was barred by the doctrine of collateral estoppel.

The trial court granted the motions and dismissed Zundel's claim. Zundel appealed.

This Court has consolidated the cases for appeal.

## II.

### THE ORAL MOTION PASSED BY THE CITY COUNCIL WAS A RESOLUTION WITHIN THE MEANING OF I.C. § 50–902.

■ Foster asserts that the lease between the city and the state is invalid because the mayor lacked authority to sign it. Foster argues that the resolution authorizing the lease was not adopted as required by I.C. §§ 50–902 and 50–1409. We disagree.

I.C. § 50–1409 provides that the mayor and city council, by resolution, may authorize the lease of any property not needed for city use. I.C. § 50–902 provides that the passage of every resolution by the city council to enter a contract requires a majority vote by a recorded oral roll call.

The Foster court heard testimony from several officials, including the city clerk. The city clerk testified that the city council took a vote to approve the lease conditionally on December 12, 1989, and that she took handwritten notes of the vote. The clerk also testified that a motion authorizing the lease was presented at the December 20, 1989 meeting of the city council and that the city council took a final vote at that time. The clerk testified that she did not record this vote because she believed that she was only required to record the vote taken on December 12, 1989. The clerk testified that the correction of typo-

graphical errors delayed the mayor signing the resolution until December 22, 1989.

■ The Foster court admitted as an exhibit a copy of the resolution signed by the mayor on December 22, 1989, on the ground that the document fell within the public records exception, I.R.E. 803(8), to the hearsay rule. A trial court has broad discretion to decide questions regarding the admissibility of evidence at trial, and its decisions will not be overturned absent clear abuse. *State v. Tierney*, 109 Idaho 474, 477, 708 P.2d 879, 882 (1985). Applying the three-step analysis stated in *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991), we conclude that the trial court did not abuse its discretion in admitting the copy of the resolution in this case.

The trial court concluded that "the oral motion made and passed by the City Council on December 20, 1989 amounted, in substance, to a 'resolution' within the meaning of I.C. § 50–902" prior to execution of the lease. We agree.

## III.

### THE CITY COUNCIL WAS ENTITLED TO AMEND ITS ORDINANCES SO THAT A SPECIAL USE PERMIT BECAME UNNECESSARY.

■ Foster asserts that Idaho law does not allow the city to legislate away impediments to the approval of a pending application for a permit. In the context of this case, we disagree.

When the trial court permanently enjoined the city from allowing the hospital to be used as a correctional facility, the city responded by amending its comprehensive land use plan and zoning ordinance, which placed the hospital in a zone that did not require a special use permit for it to be used as a correctional facility. The Foster court held that the city had complied with its new ordinance and that the property could be used as a correctional facility.

Foster argues that *South Fork Coalition v. Board of Comm'r*, 117 Idaho 857, 860–62, 792 P.2d 882, 885–87 (1990), re-

quires this Court to apply the city's original zoning ordinance to the state's application for a building permit. In *South Fork*, this Court considered whether to apply the ordinance in effect at the time an application for a development was filed, or whether to apply the ordinance as amended before a final decision on the application was made. The Court stated that an applicant's rights are determined by the ordinances in existence at the time of filing an application for the permit. *Id.* at 861, 792 P.2d at 886. The rationale for this rule is that permitting a city to apply an amendment to a previously filed application would allow a city to withhold action on a permit, amend its ordinances to defeat the application, and thereby give effect to an amended ordinance before it exists. *Id.*

*South Fork* is not applicable to this case. The state did not file an application for a building permit until after the new ordinance was in effect.

Because of our resolution of this issue, we find it unnecessary to address the failure of Foster to exhaust administrative remedies concerning the building permit, which was an issue raised by the city and the state.

### IV.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT NEITHER PARTY PREVAILED, THAT THE CITY HAD NOT ACTED FRIVOLOUSLY, AND THAT FOSTER WAS NOT ENTITLED TO COSTS AND ATTORNEY FEES.

Foster asserts that the trial court should have awarded costs and attorney fees to Foster as a prevailing party pursuant to I.C. § 12–121. We disagree.

■ We first point out that I.C. § 12–121 allows for an award of attorney fees in civil actions, but not in administrative cases. *Lowery v. Board of County Comm'r*, 117 Idaho 1079, 1081–82, 793 P.2d 1251, 1253–54 (1990). Foster initiated a civil action by filing a complaint in district court, but converted the action to an administrative case

with the filing of a petition for review of administrative proceedings on September 26, 1990. The trial court was, therefore, allowed to consider awarding attorney fees on proceedings arising from Foster's civil action, but not for proceedings arising from the administrative case.

■ The trial court did not abuse its discretion when it determined that Foster was not the prevailing party in the civil action. Identification of a prevailing party is within the sound discretion of the trial court. *Stewart v. Rice*, 120 Idaho 504, 510–11, 817 P.2d 170, 176–77 (1991). Applying the three-step analysis the Court employed in *Stewart*, we conclude that the trial court did not abuse its discretion in ruling that none of the parties in the Foster case were prevailing parties and denying Foster costs and attorney fees.

■ In any event, I.R.C.P. 54(e)(1) further limits an award of attorney fees under I.C. § 12–121 to those circumstances where the trial court finds that the action was frivolous, and the trial court found that the city did not assert frivolous defenses.

### V.

ZUNDEL WAS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE CHALLENGING THE VALIDITY OF THE CITY'S AMENDMENT IN COURT.

■ Zundel asserts that Zundel was not required to exhaust remedies before challenging the validity of the city's amended zoning ordinance through a declaratory judgment action. We agree.

In *Jerome County v. Holloway*, 118 Idaho 681, 685, 799 P.2d 969, 973 (1990), the Court distinguished between challenging the propriety of a special use permit and challenging the validity of an amended zoning ordinance. In *Jerome*, the Court said that it is necessary to exhaust administrative remedies in challenging the propriety of a permit, but that the district court has jurisdiction to entertain a declaratory judgment action challenging the validity of the enactment of amendments to zoning ordi-

nances, even though the party challenging the validity has not exhausted administrative remedies.

## VI.

### RES JUDICATA (CLAIM PRECLUSION) DOES NOT PREVENT ZUNDEL FROM LITIGATING THE VALIDITY OF THE AMENDED COMPREHENSIVE LAND USE PLAN AND AMENDED ZONING ORDINANCE.

■ Zundel asserts that under the doctrine of res judicata (claim preclusion) the decision in the Foster case does not prevent Zundel from litigating the validity of the amended comprehensive land use plan and zoning ordinance. We agree.

We first note that the city brought its motion to dismiss under I.R.C.P. 12(b)(8) ("another action pending between the same parties for the same cause") on the basis of the order dissolving the injunction and rejecting Foster's other claims in Foster II. The state brought its motion to dismiss under I.R.C.P. 12(b)(1) ("lack of jurisdiction over the subject matter") on the ground that Zundel's claims are barred by collateral estoppel (issue preclusion). The trial court granted the motions to dismiss on the grounds that the Zundel's claim "is not fundamentally different from Foster I or Foster II; the issue is likewise virtually identical."

In *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984), the Court stated the two aspects of the doctrine of res judicata:

There are two aspects to the doctrine of "res judicata." Under the principle of "res judicata" or claim preclusion, a judgment on the merits in a prior proceeding bars a subsequent lawsuit between the same parties or their privies upon the same cause of action.

The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of issues actually litigated and decided in another action, even in connection with a different claim or cause of action between the same parties in any subsequent suit.

*Id.* at 458 n. 1, 680 P.2d at 1358 n. 1 (citations omitted); *but cf. Anderson v. City of Pocatello*, 112 Idaho 176, 182–84, 731 P.2d 171, 177–79 (1986), *aff'd on reh'g*, (1987) (stating the elements of collateral estoppel, including whether the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication and that lack of mutuality is not a bar to application of collateral estoppel).

In this case we are clearly dealing with claim preclusion. Although the trial court ruled that Zundel was foreclosed from litigating the validity of the amended comprehensive land use plan and amended zoning ordinance, the record indicates that the validity of these amendments was not litigated in Foster I or II.

The dispositive question in determining the applicability of claim preclusion in this case is whether Zundel was in privity with Foster in relation to the subject of Foster I and II. In *Kite v. Eckley*, 48 Idaho 454, 282 P. 868 (1929), Justice Givens writing for the Court stated succinctly the meaning of the "privies" requirement:

Plaintiff was not a party to [the former] action. He is therefore not concluded by a judgment rendered therein unless he derives his interest from one who was a party to it, that is, unless he is in privity with a party to that judgment.

*Id.* at 459, 282 P. at 869.

Likewise, in this case Zundel was not a party to Foster I or Foster II. Therefore, claim preclusion does not apply unless Zundel was in privity with Foster concerning the subject of Foster I and II.

The Court has considered the concepts of "privies" and "privity" as they relate to res judicata, both the claim preclusion and issue preclusion aspects, in many cases. *See, e.g., First Nat'l Bank v. Hays*, 7 Idaho 139, 61 P. 287 (1900) (grantees were privies to a judgment lien entered against their grantor); *Schuler v. Ford*, 10 Idaho 739, 80 P. 219 (1905) (party in possession of land under contract to purchase is not in privity with seller where action against seller commenced after contract of sale was signed); *Smith v. Kessler*, 22 Idaho 589, 127 P. 172

(1912) (assignee of tax sale certificate is in privity with assignor); *Collard v. Universal Auto. Ins. Co.,* 55 Idaho 560, 45 P.2d 288 (1935) (injured passenger in automobile accident not in privity with driver of automobile); *Kite v. Eckley,* 48 Idaho 454, 282 P. 868 (1929) (beneficiaries of trust not in privity with trustee); *Smith v. Smith,* 67 Idaho 349, 180 P.2d 853 (1947) (natural father of child adopted without notice to him was not in privity with natural mother who was given notice).

In dismissing Zundel's claim on the basis of claim preclusion, the trial court did not specifically address the privity requirement. The trial court did say that Foster may not rely on Zundel to seek a declaratory judgment "which would have been more properly pursued in Foster II," and that Zundel's "rights will be protected by the procedures in the zoning ordinance and amended plan adopted pursuant to the Foster Court's order." These statements do not constitute a determination of privity within the meaning given by this Court to "privies" and "privity" in the cases cited above. They do not establish that Zundel derived an interest from Foster.

■ The city and the state argue that Zundel was in privity with Foster because Zundel had the capacity as "affected persons" under I.C. § 67–6521 to seek judicial review of the city's decision to grant a building permit. This argument flies in the face of our holding above that Zundel was not required to exhaust administrative remedies before pursuing a declaratory judgment action to determine the validity of the amended comprehensive land use plan and amended zoning ordinance.

■ The city and the state also argue that Zundel was in privity with Foster because Zundel participated actively in Foster I and II. Specifically, the city and the state contend that this privity is demonstrated by the following:

1. Foster and Zundel had the same counsel.

2. A large number of phone calls to Zundel were included in the request of Foster's counsel for costs and attorney fees.

3. Zundel attended all of the hearings before the planning and zoning commission and before the city council during the course of Foster's litigation.

4. Foster was originally included as a party in Zundel's action.

5. The amended complaint in Zundel's action was crafted to avoid the effect of claim preclusion.

We first point out that whether these facts would constitute privity is a question of fact that can not be resolved on motions to dismiss under I.R.C.P. 12(b). In *Collard,* Justice Budge, writing for the Court, pointed out that a determination of privity based on a party's participation in a prior action is a factual determination:

> In order to make a judgment obtained in one action conclusive in another, it must appear that the former was rendered in an action between the same parties, or between those in privity with parties to the former action.

It is urged, however, that respondent assumed such control over, and took such a part and interest in, the action between Peterson and appellant that the judgment obtained therein is binding upon respondent. While the record discloses that respondent may have taken some part in the former suit, there was proof submitted in the present case as to the nature of respondent's connection therewith and the court permitted the jury to determine the question of whether or not respondent's participation was sufficient to constitute the judgment in the former action a bar to the second action brought by respondent, which question the jury answered in favor of respondent. The evidence with relation to respondent's participation in the Peterson suit is to the effect that respondent appeared as a witness; some consultation among attorneys for Peterson and respondent; some contribution in the expense of the appeal taken; and assistance in preparation of briefs on appeal. It is generally necessary that a person, not a party to a pending suit, in order that such suit constitute *res judicata,* appear openly in the case to the knowl-

edge of the adverse party, and it is not sufficient to bind him that he merely advised or aided in the trial, gave evidence, contributed to the expense or otherwise aided therein in such respects.

*Id.,* 55 Idaho at 568–69, 45 P.2d at 291–92 (citations omitted) (emphasis in original).

In *Collard,* the Court also pointed out:

The plea of *res judicata* is an affirmative defense and the burden rests on the party asserting it to establish all of the essential elements thereof by a preponderance of the evidence.

*Id.* at 570, 45 P.2d at 292 (emphasis in original).

On the state of the record before us, we cannot conclude as a matter of law that Zundel was in privity with Foster.

### VII.

### CONCLUSION.

In Foster's case, we affirm the trial court's orders dissolving the injunction, denying Foster relief on all issues, and denying Foster costs and attorney fees. We award the city and the state costs, but not attorney fees, on appeal.

In Zundel's case, we vacate the order dismissing Zundel's claim with prejudice and remand the case for further proceedings.

We award Zundel costs, but not attorney fees, on appeal.

BAKES, C.J., and BISTLINE, McDEVITT and TROUT, JJ., concur.